Andrew N. Goldman
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

**Hearing Date: October 19, 2015**
**Hearing Time: 10:00 a.m. (EST)**
**Objection Deadline: October 13, 2015**
**Objection Time: 4:00 p.m. (EST)**

Karlene A. Aiken (application pending)
WILMER CUTLER PICKERING
HALE and DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000
Fax: (617) 526-5000

*Attorneys for the Liquidating Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- x
**In re:**                                              :   **Chapter 11**
                                                        :
**GETTY PETROLEUM MARKETING INC., et al.,**             :   **Case No. 11-15606 (SCC)**
                                                        :
                              **Reorganized Debtors**   :   **Jointly Administered**
-------------------------------------------------------------------------- x

**APPLICATION OF THE GETTY PETROLEUM LIQUIDATING**
**TRUST FOR FINAL DECREE PURSUANT TO 11 U.S.C. § 350(a) AND FED. R. BANK.**
**P. 3022 CLOSING DEBTORS' CHAPTER 11 CASES, AND FILING OF FINAL**
**REPORT OF THE GETTY PETROLEUM LIQUIDATING TRUST**
**PURSUANT TO LOCAL BANKRUPTCY RULE 3022-1**

Alfred T. Giuliano, the liquidating trustee (the "Trustee") of the Getty Petroleum

Liquidating Trust (the "Trust"), successor in interest to the above-captioned (now reorganized)

debtors and debtors in possession (the "Debtors"), hereby moves this Court, under section 350(a)

of title 11 of the United States Code (the "Bankruptcy Code"), as complemented by Rule 3022

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of a final decree

and order closing the Debtors' Chapter 11 cases, in the form attached hereto as Exhibit A (this

application being referred to herein as the "Application"). In support hereof, the Trustee

respectfully submits as follows:

**BACKGROUND**

1.    On December 5, 2011 (the "Petition Date"), each of the Debtors filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtors' Chapter

11 cases were jointly administered pursuant to an order of this Court [Docket No. 14]. On

August 24, 2012, the Court entered, pursuant to section 1129 of the Bankruptcy Code, the

*Findings of Fact, Conclusions of Law and Order Confirming the Plan of Liquidation for Getty

Petroleum Marketing Inc. and Its Subsidiary Debtors* (the "Confirmation Order") [Docket No.

714], confirming the *First Amended Plan of Liquidation for Getty Petroleum Marketing Inc. and

its Subsidiary Debtors Proposed by Official Committee of Unsecured Creditors* (as amended or

modified, the "Plan").[1]

2.    By order dated December 23, 2011, Kurtzman Carson Consultants LLC ("KCC")

was retained as notice and claims agent of the Bankruptcy Court, pursuant to 28 U.S.C. § 156(c),

11 U.S.C. § 105(a), S.D.N.Y. LBR 5075-1 and General Order M-409 as well as Voting Agent for

the Debtors (the order approving such retention, the "KCC Retention Order").

3.    On September 24, 2012, the Plan became effective (the "Effective Date"), and

pursuant to the Plan and the Confirmation Order, the Trust was established, the appointment and

designation of the Trustee was approved, and the Liquidating Trust Assets (as defined in the

---

[1] The Plan and Confirmation Order indicate that this Application and its supporting documents is to be filed within
15 days after the final distribution. However, the Trustee's desire to finalize all distributions prior to year end, and
to provide notice of the final distribution, requires the filing of this Application at this time.

2

Plan)[2] were conveyed and transferred to the Liquidating Trust.  *See* Plan, §§ 1.2, 8.1, 8.8(b), and

Schedule 1.2 thereto.

4.    The purpose of the Trust – as the Plan made clear – was to carry out the tasks of

winding up the Debtors' affairs, prosecuting all causes of action, reconciling claims, and making

distributions to holders of Allowed Claims.  Furthermore, pursuant to the Plan, the Confirmation

Order, and the Liquidating Trust Agreement, the Trustee was appointed as the Trustee of the

Trust and charged with all duties, powers and authority necessary to implement the Plan, subject

to the approval under certain circumstances of an Oversight Committee (the "Oversight

Committee").

5.    The Final Report of the Trust (the "Final Report") is annexed hereto as Exhibit B.

As set forth more fully in the Final Report, all avoidance actions and other litigations have been

concluded, all claims have been reconciled with few exceptions,[3] an interim distribution has

been made, and upon approval of this request with the Court, the Trustee will make a Final

Distribution and any necessary Residual Distribution (as defined in the Final Report).[4]

6.    The Trustee's bankruptcy closing report ("Bankruptcy Closing Report"), as

required by Local Bankruptcy Rule 3022-1, will be filed within 14 days after the Final

Distribution.  As set forth in the Final Report, the Trust has distributed the amounts listed to the

---

[2] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Plan.

[3] The Trustee filed the *Supplement to the Twelfth Omnibus Objection to Claims* on September 25, 2015 [Docket No. 1352], objecting to one of the two remaining unresolved claim.  That claim, therefore, remains outstanding pending the Court's adjudication of the Trust's objection thereto.  Further, the Trustee is in continued negotiations with one other unresolved claimholder, but expects resolution and reconciliation of that claim in short order and prior to the hearing on this Application.  Additionally, as of the date and time of this filing, the *Supplement to the Tenth Omnibus Objection to Claims*, filed August 27, 2015 [Docket No. 1339], while unopposed, remains pending.

[4] This Application will serve as the notice of Final Distribution required by section 8.4(c) of the Plan.

parties set forth therein, and plans to distribute the amounts listed in the Final Distribution and

any necessary Residual Distribution.  Thus, the Debtors' Chapter 11 cases are ready for closure.

## JURISDICTION

7.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§

157 and 1334 and Section 13.17 of the Plan. Venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The

statutory predicates for the relief sought herein are Bankruptcy Code section 350(a), as

complemented by Federal Rule of Bankruptcy Procedure 3022 and Local Rule of Bankruptcy

Procedure 3022-1.

## RELIEF REQUESTED

8.      The Trust seeks an order, pursuant to 11 U.S.C. § 350(a) and Fed. R. Bankr. P.

3022, for entry of a final decree and order (i) providing for the timeline of the Final Distribution

and any necessary Residual Distribution; (ii) closing the Debtors' Chapter 11 cases; and (iii)

terminating the engagement of KCC and releasing KCC as claims management agent,

substantially in the form attached hereto as Exhibit A (the "Closure Order").

## BASIS FOR RELIEF

9.      Section 350(a) of the Bankruptcy Code provides that the Court shall close a case

after the estate has been "fully administered."  See 11 U.S.C. §350(a).  Correspondingly,

Bankruptcy Rule 3022 provides that "[a]fter an estate is fully administered in a Chapter 11 case,

the court, on its own motion or on motion of a party in interest, shall enter a final decree closing

the case." Fed. R. Bankr. P. 3022.

10.     The 1991 Advisory Committee's notes to Bankruptcy Rule 3022 list the following

factors to be considered in determining whether a case has been fully administered:

(a)    whether the order confirming the plan has become final;

(b)    whether deposits required by the plan of reorganization have been distributed;

(c)    whether property proposed by the plan of reorganization to be transferred has in fact been transferred;

(d)    whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

(e)    whether payments under the plan of reorganization have commenced;

(f)    whether all motions, contested matters and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022 Advisory Committee Note (1991); *See, e.g., In re Union Home & Indus. Inc.*, 375 B.R. 912, 916 (B.A.P. 10th Cir. 2007) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Note when deciding whether to close a case); *In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) (same); *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990) (weighing the factors contained in the Advisory Committee Note when deciding whether to close the debtor's Chapter 11 case).  The Editors' Comment to Bankruptcy Rule 3022 describes it as "a flexible Rule to permit the court to determine that an estate is fully administered and should be closed even though payments or other activities involving the debtor and its creditors might continue." *In re Gould*, 437 B.R. 34, 37-38 (Bankr. D. Conn. 2010) (quoting Fed. R. Bankr. P. 3022 ed. cmt).  The Editors' Comment further notes that "the Advisory Committee interprets 'fully administered' very loosely and encourages courts to use substantially more discretion in deciding whether to close a Chapter 11 case than Code § 350 and the Rule literally read." Id.

11.    All of the factors set forth above support closing the Debtors' Chapter 11 cases.

Specifically:

- The Confirmation Order has become final and non-appealable.

- The Plan has been implemented and substantially consummated, and all assets and property of the Debtors that were to be conveyed to the Trust (or other third parties) under the terms of the Plan have been transferred in accordance therewith.

- All disputed claims have been resolved and either allowed or disallowed, with the two exceptions indicated in fn. 3.

- All avoidance actions and other litigations have been resolved by settlement or otherwise, and no motions or contested matters remain unresolved in these cases.

- All significant assets have been recovered and liquidated, and all assets of inconsequential value have been abandoned pursuant to orders of this Court.

- The Distributions required by the Plan have been substantially completed, the Trustee anticipates that the Final Distribution will be made on or about November 4, 2015, and the Trustee shall use all reasonable efforts to make any Residual Distribution (as defined by the Final Report) on or before December 31, 2015. This Motion shall serve as the required 30-day notice prior to making the Final Distribution as prescribed by section 8.3(c) of the Plan.

Thus, these Chapter 11 cases have been "fully administered," and the Closure Order should therefore be entered.

12.    In addition, because there will be no further need for the notice and claims services provided by KCC following the closing of these cases, the Trustee also requests that this Court order that all services provided by KCC as an agent of the Bankruptcy Court and the

6

Clerk's Office under 28 U.S.C. § 156(c) shall be terminated effective upon the entry of the Final Decree.[5]

## NOTICE

13.　　Notice of presentment of this Application, together with the Application and proposed Closure Order, will be served upon the U.S. Trustee, and the master service list in the Chapter 11 cases.  The Trustee submits that no other or further notice is required.

14.　　As this Application raises no novel issues of law and the authorities relied on herein are cited above, the Trustee requests that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b) of a separate memorandum of law.

15.　　No previous application or other request for the relief sought herein has been made to this or any other Court.

---

[5] The KCC Retention Application originally provided that an order shall be entered terminating the services of KCC as an agent for the Clerk of Court at least thirty days prior to the close of the Debtors' Chapter 11 cases, "to the extent practicable."  Because the Final Distribution will be completed shortly after entry of the Closure Order, and because the date of final distribution is the Termination Date pursuant to the Plan, such thirty-day period is not practicable.

## <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests that the Court enter the Closure Order

substantially in the form annexed hereto as <u>Exhibit A</u>, granting the Application and such other

and further relief as may be just and proper.

Date:   New York, New York            WILMER CUTLER PICKERING HALE
        October 1, 2015                 and DORR LLP


                                        */s/* Andrew N. Goldman
                                        Andrew N. Goldman

                                        WILMER CUTLER PICKERING
                                        HALE AND DORR LLP
                                        7 World Trade Center
                                        250 Greenwich Street
                                        New York, New York 10007
                                        Tel: (212) 230-8800
                                        Fax: (212) 230-8888

                                        Karlene A. Aiken (application pending)
                                        WILMER CUTLER PICKERING
                                        HALE and DORR LLP
                                        60 State Street
                                        Boston, Massachusetts 02109
                                        Tel:  (617) 526-6000
                                        Fax: (617) 526-5000


                                        *Attorneys for the Liquidating Trustee*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------- X
In re:                                                    :   **Chapter 11**
                                                          :
**GETTY PETROLEUM MARKETING INC.,** *et al.*,             :   **Case No. 11-15606 (SCC)**
                                                          :
                             **Reorganized Debtors.**     :   **Jointly Administered**
-------------------------------------------------------------------------------- X

### FINAL DECREE PURSUANT TO 11 U.S.C. § 350(a) AND
### FED. R. BANK. P. 3022 CLOSING DEBTORS' CHAPTER 11 CASES

Upon the Application of Alfred T. Giuliano (the "Trustee"),[1] as the Liquidating Trustee

of the Getty Petroleum Liquidating Trust (the "Trust"), the successor in interest to Getty

Petroleum Marketing, Inc. ("GPMI") and its affiliated debtors in the above-captioned cases (the

"Debtors"), for the granting of an order pursuant to section 350(a) of title 11 of the United States

Code (the "Bankruptcy Code"), as complemented by Rule 3022 of the Federal Rules of

Bankruptcy Procedure and Local Bankruptcy Rule 3022-1, closing the Debtors' Chapter 11 cases

and granting the other relief set forth in the Application; and it appearing that the relief requested

in the Application is in the best interests of the Debtors, their estates, creditors, and other parties

in interest; and it further appearing that these cases have been fully administered, and that an

order closing these Chapter 11 cases is appropriate under the Bankruptcy Code and the

Bankruptcy Rules, and that notice of the Application has been given as specified in the

Application; and it appearing that no other or further notice is necessary or required; and the

Final Report of the Trust having been annexed to the Application as Exhibit B and the Trustee

having provided assurance that the Bankruptcy Closing Report required to Rule 3022-1 of the

---

[1] Capitalized terms that are not otherwise defined herein have the meanings ascribed to such terms in the Application.

Local Rules of Bankruptcy Procedure will be filed within 14 days after the Final Distribution; and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED:**

1.       The Application is granted in its entirety.

2.       Pursuant to section 8.4(c) of the Plan (and as modified herein), the Final Distribution shall be made on or before November 4, 2015.

3.       Any Final Distribution to the holder of an Allowed Claim that remains unclaimed (that is, any check not presented for payment) as of December 11, 2015 shall revert to the Liquidating Trust, and the holder of such Allowed Claim shall be forever barred from receiving such Unclaimed Distribution or any other distribution.  In the event there are any Unclaimed Distributions as of December 11, 2015, the Liquidating Trustee shall use all reasonable best efforts to make a Supplemental Distribution to the remaining claimants holding then-Allowed Claims on a pro rata basis on or before December 31, 2015.

3.       Pursuant to section 350(a) of the Bankruptcy Code, the above-captioned jointly administered Chapter 11 cases are hereby closed.  Nothing in this Order shall prejudice any right to reopen these cases at any time in accordance with and for the purposes established by section 350(b) of the Bankruptcy Code.

4.       The services of Kurtzman Carson Consultants LLC ("KCC") as the official notice and claims agent of the Court and the Clerk's Office, appointed in these Chapter 11 cases pursuant to 28 U.S.C. § 156(c) and the *Order Authorizing Retention of Bankruptcy Services, Inc. as Notice and Claims Agent of the Bankruptcy Court*, dated December 23, 2011, are hereby terminated.  Nothing in this Order shall terminate any other services that KCC may be requested or obligated to provide to the Trust, as successor-in-interest to the Debtors, under the KCC

2

Agreement for Services dated as of December 2, 2011, as amended, including, without limitation, any ancillary services relating to any undeliverable, unclaimed or uncashed checks issued in the Final Distribution or Residual Distribution (as defined in the Final Report), including stopping payment and/or transferring any corresponding funds to the Trust.

4.    In accordance with Section 8.1 of the Liquidating Trust Agreement, upon the entry of this Final Decree, and after the Final Distribution and any required Residual Distribution has been made, the Trustee shall have no further duties under the Plan or Liquidating Trust Agreement, shall be discharged and released from any further responsibility in respect thereof, and the Trustee – along with his agents, employees, attorneys, consultants and other  advisors - are each hereby released from any claims or causes of action asserted or assertible by any party under law or equity in any way relating to any actions taken, services performed (or actions or services omitted) during the entirety of the Debtors' postconfirmation winddown process.

5.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York

_____, 2015

_____
SHELLY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In re:                                               )
                                                     )  Chapter 11
Getty Petroleum Marketing Inc. *et al.*,             )
                                                     )  Case No. 11-15606 (SCC)
                                                     )
                        Reorganized Debtors.         )  (Jointly Administered)
_____     )

## <u>FINAL REPORT OF THE GETTY PETROLEUM LIQUIDATING TRUST</u>

Alfred T. Giuliano (the "<u>Trustee</u>"),[1] as the Liquidating Trustee of the Getty Petroleum

Liquidating Trust (the "Trust"), the successor in interest to Getty Petroleum Marketing, Inc.

("<u>GPMI</u>") and its affiliated debtors in the above-captioned cases (the "<u>Debtors</u>"), pursuant to its

authority under the First Amended Plan of Liquidation for Getty Petroleum Marketing Inc. and

its Subsidiary Debtors Proposed by Official Committee of Unsecured Creditors, dated May 30,

2012 (the "<u>Plan</u>") and the Order of this Court (the "<u>Bankruptcy Court</u>") confirming the Plan,

dated August 24, 2012 (the "<u>Confirmation Order</u>"), hereby submits this final report of the Trust

(the "<u>Final Report</u>").

## <u>Background</u>

1.      The Debtors commenced these Chapter 11 cases by filing voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code with this Court on December 5, 2011.

2.      On August 24, 2012, this Court entered the Confirmation Order confirming the

Debtors' Plan.  The Plan became effective on September 24, 2012 (the "<u>Effective Date</u>").

Pursuant to the Plan and the Confirmation Order, substantially all of the Debtors' assets were

---

[1] Capitalized terms that are not otherwise defined herein have the meanings ascribed to such terms in the Plan.

transferred and assigned on the Effective Date to the Trust, which was formed for the purpose of winding up the Debtors' affairs, prosecuting causes of action, reconciling claims, and thereafter making distributions to creditors. Furthermore, pursuant to the Plan and the Confirmation Order, the Trustee was appointed as the trustee of the Trust and charged with all duties, powers and authority necessary to implement the Plan, subject to the oversight in certain circumstances of an Oversight Committee (the "Oversight Committee") designated by the Unsecured Creditors' Committee and appointed under the Confirmation Order.

3.      To date, the Trustee has filed and served ten (10) interim status reports for the Trust. These reports collectively provided a summary of the activities of the Trustee and the affairs of the Trust from the Effective Date through June 30, 2015. This Final Report generally summarizes developments occurring from June 30, 3015 through October 1, 2015.

## Overview

4.      The Trustee has completed the liquidation of the Debtors' remaining assets and plans to make, on November 4, 2015, the Final Distribution to creditors in accordance with the Plan. The Trustee is filing contemporaneously herewith an application to close the Debtors' Chapter 11 cases pursuant to section 350 of the Bankruptcy Code. In connection with these activities, the Trustee has, from time to time and to the extent mandated by the Plan and Confirmation Order, sought the advice and guidance of the Oversight Committee. The following generally summarizes these activities.

## Cash Receipts and Disbursements

5.      Overview. During the period from September 24, 2012 to October 1, 2015, the Trust received approximately $106.3 million in aggregate cash receipts, including $93 million in gross recovery from the adversary proceeding involving Lukoil Americas Corp. and other

affiliates (the "Lukoil Litigation"), and in excess of $2 million from an adversary proceeding

involving Bjorn Aaserod, Joseph Scott Karro, and Cambridge Securities, LLC.

6.      During that same period, the Trust disbursed approximately $78.3 million

(primarily consisting of approximately $32 million to Getty Realty on account of its

superpriority claim and litigation funding rights related to the Lukoil litigation, as well as $19.0

million in an interim distribution to holders of then Allowed Claims).  The Trust is also holding

approximately $29.6 million to be distributed in the Final Distribution.  The primary components

of these cash receipts and cash disbursements are described below.

7.      Summary of Cash Receipts.  During the period from September 24, 2012 to

October 1, 2015, the Trust had aggregate cash receipts of approximately $106.3 million.  These

cash receipts included the following (as disclosed in more detail in the 10 prior status reports of

the Trust):  (i) proceeds from various asset sales and dispositions, including the sale of real

estate, and the disposition of debt and equity interests in various entities; (ii) proceeds recovered

on account of various claims against and interests in non-Debtor affiliates and subsidiaries; (iii)

net cash proceeds from the prosecution and/or settlement of various preference claims and other

claims against third parties, including the Lukoil Litigation; (iv) the recovery of various escrows

and deposits; (v) interest earned; and (vi) various other miscellaneous cash receipts.

8.      Summary of Cash Disbursements.  During the period from September 24, 2012 to

October 1, 2015, the Trust made cash disbursements of approximately $78.3 million, the primary

components of which were the following (as disclosed in more detail in the 10 prior status

reports of the Trust and in paragraph 6 above):  (i) interim distributions under the Plan to holders

of Allowed Claims (both superpriority, administrative and unsecured), as described in more

detail below; (ii) funding obligations related to the Lukoil litigation, as well as legal and

3

professional fees and expenses of the Trust, the Oversight Committee and the quarterly fees required to be paid to the office of the US Trustee; (iii) consulting fees, expenses and compensation for the individual consultants staffing the Trust's operations and the Trustee; (iv) operating expenses of the Trust (including insurance, rent, utilities, telephone, taxes, storage of records, and other expenses); and (v) various other smaller miscellaneous cash disbursements. The Trustee is also planning on making the Final Distribution shortly after the entry of the Closure Order.  In the event any distributions made by the Final Distribution remain unclaimed on December 11, 2015, the Liquidating Trustee will endeavor to redistribute those remaining funds in accordance with sections 8.5(c) and 8.7 of the Plan (the "Residual Distribution"), subject to best efforts, before year end 2015.

## Distribution to Creditors

9.      The Trustee made an initial distribution to then holders of Allowed Claims in December 2014.  The Trustee plans to make the Final Distribution to holders of Allowed Claims on November 4, 2015, as provided for in the Closure Order, in the amount of $29.1 million.  The Trustee will endeavor to make any Residual Distribution on or before December 31, 2015, as necessary.  The aggregate cash distributions made to holders of Allowed Claims in all such distributions will total approximately $48.1 million.  The total amount distributed to holders of Allowed General Unsecured Claims represents approximately 10.64% of the Allowed amounts of such Claims.  Said differently, the cases – which at one point appeared to be administratively insolvent – will yield recoveries in excess of 10% to holders of Allowed General Unsecured Claims.

## Claims Reconciliation Process

10.      In conjunction with its professional advisors and the Trust's claims agent,

Kurtzman Carson Consultants LLC, the Trustee undertook a claims analysis of the more than

2,000 proofs of claims that were filed in the Debtors' Chapter 11 cases.  In November and

December 2013, following completion of this review and this Court's Order approving

procedures for the filing of omnibus objections to Claims, the Trustee filed fifteen omnibus

objections to the allowance of said claims.  Through various Orders granting omnibus relief or

approving individual settlements and claim resolutions, the Bankruptcy Court has upheld the

Trustee's objections with respect to many of the Disputed Claims to which the Trustee has

objected, resulting in the disallowance or the reduction in amount and/or priority of such Claims.

The claims reconciliation process is in large part complete.[2]

## Bankruptcy Claims

11.      <u>Preference and Fraudulent Conveyance Claims</u>.  The Trustee retained several

firms to prosecute the Debtors' potential preference actions against third parties. Such firms

commenced an aggregate of approximately 80 adversary proceedings in the Bankruptcy Court to

recover avoidable payments.  These firms recovered for the Trust in the aggregate approximately

$616 thousand (after deduction of counsel fees and expenses) in net cash collections and

offsetting credits against distributions otherwise owing to creditors in respect of their Allowed

Claims (or credits resulting from reductions in the otherwise Allowed Claims).  The Lukoil

---

[2] The Trustee filed the *Supplement to the Twelfth Omnibus Objection to Claims* on September 25, 2015 [ECF No. 1352], objecting to one of the two remaining unresolved claims.  That claim, therefore, remains outstanding pending the Court's adjudication of the Trust's objection thereto.  Further, the Trustee is in continued negotiations with one other unresolved claimholder, but expects resolution and reconciliation of that claim in short order and prior to the hearing on this Application. Additionally, as of the date and time of this filing, the *Supplement to the Tenth Omnibus Objection to Claims*, filed August 27, 2015 [Docket No. 1339], while unopposed, remains pending.

Litigation alone netted the Trust $93 million on a gross (that is, before payment of funding and legal fee) basis, which brought in a significant amount of funds for the Trust, and in turn, for the Creditors.  Additionally, the Liquidating Trustee prosecuted an action against Bjorn Aaserod, Scott Karro, and Cambridge Securities, LLC, which settled for an amount of over $1 million, plus proceeds from the sale of certain leases.

12.     All preference and avoidance actions have been resolved through adjudication, settlement or dismissal.

## Liquidation of Assets

13.     In 2015, the Trustee completed the liquidation and collection of the remaining Debtor assets.  During this period, the Trust obtained recoveries with respect to miscellaneous receipts in an aggregate amount of approximately $10.4 million.

## Taxes

14.     The Trustee has worked closely with the Trust's tax advisors on a variety of tax matters, including preparation of tax returns and tax planning for the Trust.  Final federal and state tax returns for the Trust in respect of the year ending December 31, 2015 will be completed and filed as part of the final wind-down process (assuming the Trustee is able to make any supplemental distribution of  unclaimed funds before year end 2015).

## Completion of Wind-Down

15.     The Trustee has overseen the completion of the wind-down of the Debtors' and Trust's affairs.  In accordance with the Plan and the Trust Agreement, these activities include the

preparation and filing of final tax returns (as described above); the storage and abandonment[3] of

the Debtors' and Trust's business records; and the sale of its headquarters building in East

Meadow, New York and termination of all remaining operations.  The wind-down is

substantially complete, with all remaining activities anticipated to be completed following entry

of a decree closing these Chapter 11 cases.

This Final Report was prepared based on the information available to the Trustee

at the time of its preparation and the disclosures set forth herein are subject to change based upon

the review of additional information and developments occurring after the date of this Final

Report.  Nothing in this Final Report shall be deemed (i) to create any right, claim or cause of

action on behalf of any holder of a Claim or Interest to any distribution or reserve, (ii) an

admission or acknowledgement of any sort by the Trustee, the Trust or the Debtors with respect

to the validity, priority or amount of any Claim or Interest, or (iii) a release, waiver, restriction or

limitation of any right, claim, defense, interest or remedy that the Trustee, the Trust or the

Debtors may now or hereafter have with respect thereto or otherwise.  All such rights, claims,

defenses, interests and remedies are expressly reserved.

---

[3] The Debtors' business records were abandoned pursuant to a stipulation entered into between the Trustee and
certain parties to a class action lawsuit in the District Court for the Southern District of New York, and blessed by
both this Court and the District Court judge presiding over that class action lawsuit.

Date:   New York, New York                     WILMER CUTLER PICKERING HALE
        October 1, 2015                          and DORR LLP

                                               /s/ Andrew N. Goldman
                                               Andrew N. Goldman
                                               7 World Trade Center
                                               250 Greenwich Street
                                               New York, New York 10007
                                               Tel: (212) 230-8800

                                               Karlene A. Aiken (application pending)
                                               WILMER CUTLER PICKERING
                                               HALE and DORR LLP
                                               60 State Street
                                               Boston, Massachusetts 02109
                                               Tel:  (617) 526-6000

                                               ATTORNEYS FOR THE LIQUIDATING
                                               TRUSTEE